Charlotte C. Joslyn, Appellant, v. George R. Joslyn, Appellee.

Gen. No. 41,688.

Heard in the second division of this court for the first district at the April term, 1941. Opinion filed June 19, 1942. Rehearing denied July 1, 1942.

THOMAS HART FISHER, of Chicago, for appellant; NORMAN CRAWFORD, of Chicago, of counsel.

HUBBARD, BAKER & RICE, of Chicago, for appellee; ALVIN GLEN HUBBARD, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed her complaint for divorce upon the ground of desertion. Defendant filed an amended answer and counterclaim denying the desertion charged in the complaint and praying a divorce from plaintiff on the ground that she had been guilty of adultery with divers persons. Later, plaintiff filed a reply to the amended answer of defendant and an answer to the counterclaim in which she denied the allegations that she had been guilty of adultery and averred that defendant had committed adultery with divers persons. Defendant filed a rejoinder denying the charges that he was guilty of adultery as charged. The case was tried by the court. The trial commenced on June 14, 1940, and continued until October 1, 1940, when a decree was entered. It found that defendant had not proved his counterclaim and it was dismissed for want of equity. The decree further found that defendant had deserted plaintiff as charged in her complaint and decreed dissolution of the marriage. The decree further provided that the care and custody of the four minor children born of the marriage was awarded to plaintiff, subject to the right of defendant to have custody of the children at stated·intervals throughout the year. Defendant was ordered to pay to plaintiff for the support of the minor children $100 monthly for each of the children and plaintiff was required to render a statement to defendant at the end of each month showing how she had applied or conserved the $400 for the use and benefit of the children. The decree contained also the following provision:

"It is further ordered that the alimony of Charlotte C. Joslyn be and the same is hereby fixed at the sum of One Hundred Dollars per month and George R.

Joslyn is ordered to pay $100.00 each month to Charlotte C. Joslyn for her alimony, payable on the 15th day of each month.''

The decree reserved jurisdiction to determine whether or not any solicitor's fees should be paid to plaintiff for and on account of services rendered by her solicitor, and in that connection provided:

''That in the determination as to whether any fees shall be paid by the defendant, George R. Joslyn, to the plaintiff, in addition to the thousand dollars already paid, *the Court may consider the matter as though the issues upon the counterclaim had been determined in favor of George R. Joslyn.*

''It is further agreed between the parties, by their respective solicitors, that the decree entered herein is without prejudice to either party relative to the solicitors fees to be awarded the plaintiff, if any; and that the evidence heretofore offered may be considered in fixing the plaintiff's reasonable solicitor's fees if any.'' (Italics ours.)

Plaintiff appeals only from that part of the decree of October 1, 1940, ''relating to the alimony to be paid the plaintiff and the support money to be paid the plaintiff for the use of her four minor children.''

Plaintiff contends ''that the trial court entered that portion of the divorce decree of October 1, 1940, relating to alimony and support of plaintiff and her four children, without any evidence in the record whatever of the property rights of the parties, of the standard of life of the plaintiff and defendant and their children, and the earning power and income of the defendant; that the trial judge had no knowledge of any of these matters and had excluded any evidence relating thereto upon the trial before him by ruling that the subject of alimony should be reserved for consideration after the divorce issue was adjudicated. No agreement was entered into between the parties or their attorneys making any part of the divorce de-

cree of October 1, 1940, a consent decree on the subject of alimony and support.''

Defendant contends that plaintiff and defendant made an oral agreement covering plaintiff's alimony and that it was the duty of the trial court to enforce that oral agreement; that plaintiff's counsel acquiesced in the agreement; that the decree as to alimony was by consent and the consent precludes any review.

On September 30, 1940, after the evidence in the cause was practically concluded, the trial court called plaintiff and defendant, alone, into his chambers, where the following occurred:

''The Court: I have called you into chambers in the hope that even at this late stage, you can find some agreement which will make it unnecessary for us to continue this case and thereby avoid further publicity.

''George R. Joslyn: Your Honor, I appreciate your efforts to settle this case, but our experience before Judge Desort has discouraged me from expecting any concrete results from it.

''Charlotte C. Joslyn: That is not true at all. There is no reason why we cannot settle it.

''The Court: Well, what is the principal point on which you cannot get together? Is it the question of money?

''Charlote C. Joslyn: No, definitely not. It has never been a question of money.

''The Court: Well, then it must be the question of custody of the children, what is the difficulty there?

''Charlotte C. Joslyn: Well, Mr. Joslyn insists on having the children alternate week ends.

''The Court: Well, what is your objection to that? That is the custody provision.

''Charlotte C. Joslyn: I don't like to have their lives interrupted every two weeks. It is bad discipline for them. They look forward to two days of picnic every two weeks and they are days getting over it. I

want to maintain an even tenor of their lives. It is unfair that Mr. Joslyn should have the children for picnic occasions of that kind, when it is all fun and no work, presumably no discipline, whereas their mother and supervisor of their workday life, is the one who has to hold them to their appointed tasks with all the resentment which is bound to occur from the children.

"The Court: That is inherent in any family split. There is not much that can be done about that except insofar as Mr. Joslyn realizes the danger and holds down the excitement to which he brings them when he has custody of the children. Now, Mr. Joslyn as to financial matters, what are you prepared to offer?

"George R. Joslyn: $500.00; $100.00 a month for each child until they are 21, and $100.00 to Mrs. Joslyn so long as she remains single.

"The Court: Mrs. Joslyn, is that acceptable?

"Charlotte C. Joslyn: Whatever he proposes. I have been getting more and I think I should have more, but if that is all he wants to offer, that is acceptable.

"The Court: I can see Mrs. Joslyn's point about the even tenor of the children's lives, are you not prepared to make some concession on that?

"George R. Joslyn: Yes, I am. If I can see the children from one to five every Saturday afternoon, with the privilege of taking them out of the home, as for example, to see their grandparents or taking them to the Zoo, or for a swim, and then if I may have them every eighth week to take them to the farm, that will be satisfactory, along with the other provisions that I have them during the summer months and alternate Christmas and Easter vacations.

"Charlotte C. Joslyn: I will agree to that.

"The Court: Are there any other points on which there is any disagreement?

"George R. Joslyn: Yes, there is another point, and a very important point, and that is the question of attorney's fees.

"The Court: Well, what are you prepared to offer Mr. Fisher to settle this thing?

"George R. Joslyn: $1500.00 in addition to the $1000 he has already received under court order.

"The Court: I am not going to recommend that Mr. Fisher accept that or that he refuse it. That is a matter that seems to me you should be able to find some agreement on, and it would be a shame to defeat the settlement of this case merely on the question of attorney's fees."

Plaintiff and defendant then left the judge's chambers and Thomas Hart Fisher, attorney for plaintiff, and Alvin Glen Hubbard, attorney for defendant, entered the chambers. The following then occurred:

"The Court: These parties have agreed upon a settlement of this case. Mrs. Joslyn says she is willing to accept whatever Mr. Joslyn is willing to give and they have also agreed on the custody provision.

"Mr. Hubbard [attorney for defendant]: Judge, this case has been settled many times and each time Mr. Fisher has kicked it over. I cannot believe there is any chance for a settlement now. I think that we will save time if we go outside and if your Honor permits me to proceed to cross examine Mr. Alexandroff.

"Mr. Fisher [attorney for plaintiff]: Mr. Hubbard does not want to settle the case. All he wants to do is to litigate. He wants to scandalize this little woman. I have always been willing to make any reasonable settlement. Now Mr. Hubbard attacks me.

"The Court: Mr. Hubbard, your client says he is willing to support her. She says she will accept whatever he is willing to offer. *I do not want to make an adjudication of adultery against this woman. Maybe,*

*I have got to, under the evidence; but I do not want to. Now, do you want me to make a finding of adultery against this woman?*

"Mr. Hubbard:. No; I do not, Judge.

"The Court: Then why shouldn't this case be settled?

"Mr. Fisher: We want a finding that Mrs. Joslyn has not been guilty of misconduct. I think the decree should find that neither Mrs. nor Mr. Joslyn has been guilty of adultery.

"Mr. Hubbard: I have been through this, Judge, so many times that I have no hope of settling anything in this case. The parties will agree but Mr. Fisher then kicks it over. We will never have anything here which is agreed to and I appreciate very much your Honor's attitude in the matter and your Honor's efforts to have the parties compromise this matter. The parties will reach an agreement and when Mr. Fisher subsequently states the terms, very little of the original understanding is left. It is an entirely different agreement.

"Mr. Fisher: I have tried throughout to adjust this matter, make a reasonable settlement for this woman, a mother of four children. All Mr. Hubbard wants to do is to scandalize this woman, drag her name down in dirt. Mr. Hubbard is the one that does not want any agreement.

"The Court: The parties in this case have agreed to settle. Mrs. Joslyn says that she is willing to accept whatever her husband is willing to offer and they have also agreed upon the custody provision. The only question remaining is the amount of attorney's fees.

"Mr. Hubbard: That is Mr. Joslyn is to have the custody of the children each alternate week end and alternatively each year Mr. Joslyn is to have the children for the Christmas or Easter vacations and he is to have their custody during the summer.

"The Court: I do not think that Mr. Joslyn should have the children every other week end. It is not good for the children and it does interrupt the discipline in the home and Mr. Joslyn has conceded that point. The parties have agreed to all of the matters except there remains the question of attorney's fees. I feel that the question of attorney's fees should not stand in the way of there being a settlement in this case.

"Mr. Hubbard: I will not stand by and permit a decree to be entered here leaving Mr. Fisher to come in and show all the time and talk that has been expended by him in relation to this case. Our proposition is that Mrs. Joslyn is to have $100.00 a month. She is also to receive $100.00 for each of the children and Mr. Fisher is to have $1500.00 attorney's fees in addition to the $1000.00 which has already been paid. If there is to be any settlement in this case it will have to include attorney's fees.

"Mr. Fisher: It is not proper to have any question of attorney's fees. I would not settle the case and have people around town say that I compromised my client's case to get an attorney's fee. I will not be in that position. I would be scandalized. People would say that I had thrown away or given away my client's rights in order to get an attorney's fee. The question of attorney's fee will have to be left to be decided by the Court.

"The Court: You should be able to agree on attorney's fees. At any rate, the question of attorney's fees should not stand in the way of these people making a settlement.

"Mr. Hubbard: Judge, if this case goes on to its final conclusion, they will get no attorney's fee, as Mrs. Joslyn cannot under any possibility ever obtain any relief, and under the law as it now stands, there is a decision on this particular section of the Statute, the Court cannot award her any attorney's fees.

"Mr. Fisher: That is not so, why the wife is entitled to her attorney's fee if she loses the case. She is entitled to just as much attorney's fees if she loses the case as if she had won it. She is entitled to have her case prepared, have counsel try it and to be paid for it, and her counsel would receive the same amount if she lost her case as though she had won it. It is not material whether she has won or lost her case on the question of attorney's fees.

"Mr. Hubbard: If Mr. Fisher is so sure of his ground on this provision, I submit then that we should have an understanding on the question as to whether Mrs. Joslyn is to be allowed an attorney's fee, the Court should consider the matter as though the issues had been determined in favor of George R. Joslyn upon the complaint and counterclaim, and in fixing Mr. Fisher's fee, if he is to have any, the Court will decide the matter as though Mr. Joslyn had won the case, and Mr. Fisher shall receive only such fee as would rightly have been allowed in this case had there been a decree of divorce entered upon the counterclaim.

"Mr. Fisher: That will be agreeable to me.

"Mr. Hubbard: If that is agreeable to Mr. Fisher, then we will agree upon everything, but I will insist that that provision will be inserted in the decree, and I will now write out the provision which will go into the decree.

"Thereupon Mr. Hubbard wrote the following:

" 'That in the determination as to whether any attorney's fees shall be paid by the defendant, George R. Joslyn, to the plaintiff in addition to the $1000.00 already paid, the Court shall consider the matter as though the issues upon the complaint and upon the counterclaim had been determined in favor of George R. Joslyn' and handed same to the Court.

"Mr. Hubbard: If that provision is inserted in the decree, then I shall agree to it.

"Mr. Fisher: Why that would make the entire decree invalid. It is all right with me except that would make the entire decree invalid. I don't want to have the decree invalid. I don't think it ought to be put in the decree at all.

"Mr. Hubbard: If the decree is entered it becomes *res adjudicata* as of its date and fixes the rights. If any decree is entered in this case and Mr. Fisher's claim for attorney's fee is left out as a matter to be subsequently decided, I want it definitely understood that this Court will fix his fees and that this Court will consider all of the evidence which has been offered, and that we shall be permitted to show Mr. Fisher's relations with this woman. That is, Mr. Fisher's relation with this woman was not that of attorney and client; that he was one of her paramours. If Mr. Fisher wants to leave the question of attorney's fee out, I want to be in a position that the Court will go into and consider all of the equities in the matter.

"The Court: You shall have that right, and suppose I change this provision which you have written by striking out the word 'shall' and putting in the word 'may', and that can be inserted right in the decree." (Italics ours.)

Thereupon Mr. Hubbard left the chambers and returned with defendant. The following then occurred:

"Mr. Hubbard: We are prepared to offer $1500.00 for Mr. Fisher's fees.

"Mr. Fisher: I will not accept any lump sum. I do not want to be put in the position of compromising my client's interest merely for attorney's fees, and for that reason I insist that the attorney's fees shall be left out.

"Mr. Hubbard: We will agree that the question of attorney's fees shall be left out of the settlement provided that the matter will be determined in the discretion of this Court. That is if this Court will determine the equities in the matter, we will be content to

leave it to the discretion of this Court. I want the decree to provide that the entry of the decree is to be entirely without prejudice as to the question of whether or not Charlotte C. Joslyn is to be entitled to any solicitor's fees, and if any, the amount that she is to receive.

*"During all of the conferences in the chambers, the Court made notes of the various items.*

"The Court: I will go out and read it into the record." (Italics ours.)

The trial judge has certified that the foregoing statement as to what transpired in his chambers is a true and correct statement and we have no doubt that the certificate speaks the truth, in spite of the fact that counsel for plaintiff challenges the correctness of the statement. However, in our view this appeal can be decided upon what transpired in open court. It will be noted that what there transpired accords with what the trial court certifies took place in chambers.

Directly after the conferences in chambers the following proceedings were had in open court:

"The Court: Let the record show that a decree of divorce is granted the plaintiff, Mrs. Joslyn, on the ground of desertion, and that she be given custody of the children, subject to the following conditions: That the husband have the children during the summer vacation, that is, from the time that the school adjourns until it convenes in the fall, except that the children shall be returned to the mother at least five days before the fall term commences; that the defendant shall have the custody of the children every week end from —every Saturday from one to five o'clock in the afternoon, and may have their sole care and custody every two months from Friday afternoon until Sunday evening. The plaintiff is awarded the sum of $100 a week for each child.

"Mr. Alvin Hubbard: A month, Judge, not a week.

"The Court: I am sorry. $100 a month for each child and the plaintiff is awarded the sum of $100 as alimony. You understand that, Mrs. Joslyn, $100 a month?

"Mrs. Joslyn: Yes, your Honor.

"The Court: And you can't claim any more at any time, you will be bound by that sum.

"Mr. Fisher: Oh, now, just a moment. We can't agree to that, the last statement of the Court there. I assume that the award is going to be made and stops there, because that would require some concession on the part of the plaintiff which she isn't prepared to make.

"The Court: What do you mean, stop there?

"Mr. Fisher: I mean the plaintiff must be left in the position in which the plaintiff finds herself after the Court has entered the order, without being asked to make any waivers or agreements or concession. I have just advised my client that in my opinion it is not possible for her now to forecast where she will be when the children have reached maturity and that she can't make an agreement effectively now, shouldn't make an agreement now that runs twenty years or thirty years or fifty years into the future.

"The Court: She would be bound, Mr. Fisher. I thought that was understood.

"Mr. Fisher: It can't be done by agreement; if the Court enters the order on his responsibility, I have said we would be glad to be bound by the Court's finding. But when the Court turns to the plaintiff and asks for something more is when I have my difficulty.

"The Court: Well, that would be the sum, in any event. I would have to fix it now.

"Mr. Fisher: Well, I assume your Honor has fixed it.

"The Court: Yes.

"Mr. Fisher: But not in view of the plaintiff's position. It is the Court's own responsibility that the matter has been decided.

"The Court: All right, there will be $100 a month for the plaintiff. And the decree will further provide that in determining as to whether any fees shall be paid by George R. Joslyn, the defendant, in addition to the thousand dollars already paid, the Court may consider the matter as though the issues upon the complaint and upon the counter-claim had been determined in favor of George R. Joslyn.

"It is further agreed between the parties, by their respective solicitors, that the decree entered herein is without prejudice to either party relative to the solicitor's fees to be awarded the plaintiff, if any, and that any evidence heretofore offered may be considered in fixing the plaintiff's reasonable solicitor's fees, if any.

"Now, is there anything further?

"Mr. Hubbard: There is the alternate; your Honor did not state that he is to have the children during the alternate vacations each year, one or the other.

"The Court: I beg pardon.

"Mr. Hubbard: He was to have the children during either the Christmas or spring vacation.

"The Court: Oh, yes. And as regards the custody of the children, the defendant is to have the children during the Christmas holidays?

"Mr. Hubbard: One or the other, alternate each year.

"The Court: And what was the other?

"Mr. Fisher: Easter.

"Mr. Hubbard: Easter.

"The Court: Or the Easter holidays.

"Mr. Fisher: Well, now, with regard to that final paragraph about 'It is further agreed', I understood if the Court is entering this order it would recite 'That it is further ordered' and not agreed, as we do not intend to have an agreed order.

"The Court: Put it that way.

"Mr. Fisher: 'It is further ordered that the decree entered herein is without prejudice', and so forth.

"The Court: That that is my order. That is the last paragraph of the decree with regard to solicitor's fees: 'It is further ordered that the decree entered herein is without prejudice to the parties relative to the plaintiff's solicitor's fees, and that any evidence heretofore offered may be considered in fixing the plaintiff's reasonable solicitor's fees, if any.'

"Mr. Fisher: That makes the order not an agreed order, but the Court's order.

"The Court: That is right. Now, is there anything further?

"Mr. Hubbard: We will bring in the decree to-morrow morning.

"The Court: That is all right. I wish you would get the decree in here and all sign it."

On Tuesday, October 1, 1940, at two o'clock p.m., the court convened pursuant to adjournment, when the following occurred:

"Present: Mr. Thomas Hart Fisher, Mr. Norman Crawford, Mr. Alvin G. Hubbard, Mr. Reese Hubbard, Mr. Leonard Brill.

"Mr. Hubbard: We have drawn a decree in accordance with the ruling which your Honor made yesterday.

"The Court: Are there any objections?

"Mr. Fisher: The only difference that I now notice between this decree and the one which the Court intended to enter, that I can find by glancing over it, is that there is not any provision for Mrs. Joslyn visiting the children at the farm in the summertime, and that one week during the summer is also eliminated. They sort of go together. I don't know whether your Honor wants to enter that part of the order.

"Mr. Hubbard: When we had the discussion in there we were to return the children five days earlier,

and we also waived our right to have them for week ends excepting for the two months. However, it is not our disposition, for instance, just to make it more complicated. We are not of a disposition to exclude Mrs. Joslyn from coming. Even the two weeks he had them we gave her an invitation and provided the place for her to stay, if she didn't want to stay in the same house with Mr. Joslyn. Of course that is a standing invitation all the time we have them, if she wants to come there. The decree complies strictly with what your Honor announced. I have the transcript of it right here.

"The Court: Well, that is what he told me. He said she can come out any time.

"Mr. Hubbard: That is right.

"Mr. Fisher: And it is understood your Honor wishes her to have the right to the children for one week during the summer vacation?

"The Court: Well, she said something about wanting to come out there for a week.

"Mr. Hubbard: She can come any time she wants to, Judge.

"Mr. Fisher: The discussion had to do with her actually having them for a week during the summer.

"The Court: Well I didn't quite understand it that way, I thought she wanted to come out there.

"Mr. Hubbard: She can if she wants to.

"Mr. Fisher: Well, of course, whether she wants to, I don't know. She would want the right to visit them, and other things that she would want to have done.

"The Court: We talked about bringing them back a little sooner.

"Mr. Fisher: Mr. Hubbard has inserted in this decree a five day clause.

"Mr. Hubbard: Not less than five days.

"Mr. Fisher: Not less than five days.

"Mr. Hubbard: That is exactly what the —

"Mr. Fisher: That is what the Court said he wanted to do.

"The Court: I don't think you are going to have any trouble about that.

"Mr. Hubbard: If she wants to come out there, Judge, and be with the children, there is no disposition on our part to keep her away or to make it inconvenient or unpleasant for her to be there, it is just the opposite. There was one letter when we took them before asking her to come out if she would like to.

"Mr. Fisher: It is a fact that Mr. Hubbard is right, Mr. Joslyn did write a letter inviting her this summer to come to the farm and see the children, if she wanted to do so.

"The Court: Why don't you let it stand as it is? If you run into any trouble about that, next year you can come in and modify it.

"Mr. Fisher: This is your Honor's order and we want to follow your Honor on it. We are like anybody in court, we want your Honor to assume the responsibility of making the decision throughout."

From the answer made by plaintiff in open court to the court's direct question to her, it is clear that she agreed to the amount of $100 a month as alimony. That the trial court assumed, as he had a right to assume, that her counsel was interposing no objection to the amount of the alimony is also clear. Counsel for plaintiff now makes the somewhat bold statement that neither he nor his client agreed in open court to the payment of any definite alimony. In the proceedings in open court Mr. Fisher made no objection when the court stated that he would award plaintiff the sum of $100 a month as alimony. It was only when the court stated to plaintiff that she could not claim any more *at any time* that Mr. Fisher made the objection that plaintiff should not make an agreement then that would run twenty years, thirty years, or fifty years into the future. It is plain that counsel then

had in mind that a change of circumstances in the future might warrant a change in the amount of alimony. But in open court proceedings he made no objection to the amount allowed. He now states that plaintiff should be allowed not less than $1,500 a month in view of the assets and income of defendant, but in open court he did not state nor intimate to the trial judge that he wanted a hearing on Joslyn's financial standing before the amount of alimony was fixed; nor did he offer any evidence touching that subject matter. Indeed, he stated that "if the court enters the order on his responsibility, *I have said that we would be glad to be bound by the court's finding.*" Just before the decree was entered the trial court asked Mr. Fisher if he had any objections to the proposed decree, and the only objection he made was that there was no provision for Mrs. Joslyn's visiting the children at the farm in the summertime. That objection was cleared up before the decree was signed. Mr. Fisher made no reference to the provision in the decree as to the amount of alimony. Upon the oral argument in this court, one of the members of the court asked Mr. Fisher why, if he then intended to thereafter question the amount of alimony allowed, he did not fairly and frankly apprise the court of his real position, to which counsel replied that he felt that Mrs. Joslyn had won a great victory and that he thought it best to say as little as possible at the time. That counsel could not have intended at the time to thereafter question the amount of the alimony allowed is clearly shown by the fact that when the decree was entered there was no evidence in the record as to defendant's assets and income. Plaintiff complains, in this court, that the portion of the decree relating to alimony for the support of plaintiff and her four children was entered "without any evidence in the record whatever of the property rights of the parties, of the standard of life of the plaintiff and

defendant and their children, and the earning power and income of the defendant.'' If counsel for plaintiff intended at the time to appeal from the order in relation to the alimony it would have been necessary for him to offer evidence as to the earning power and income of defendant. We feel impelled to state that the only reasonable inference that can be drawn from Mr. Fisher's conduct is that he desired above all things a decree that would find his client not guilty of adultery, and that he was satisfied, for the time being at least, with the amount of alimony allowed plaintiff. The decree reserved jurisdiction to determine whether or not any attorney's fees should be paid to plaintiff, and Mr. Fisher was so pleased with the great victory won for Mrs. Joslyn that he was satisfied to have incorporated in the decree a provision that in the determination of the question as to whether any attorney's fees should be paid by defendant to plaintiff the court might consider the matter of fees ''as though the issues upon the counterclaim had been determined in favor of George R. Joslyn.'' It is not the practice in this state to award alimony to a wife, for her support, who has been found guilty of adultery. The instant claim as to alimony must be considered as an afterthought, for if we assume that counsel intended at the time to thereafter question the amount of the alimony then we must conclude that he was not honest in his conduct toward the trial court. Counsel knew, as he stated to this court, that plaintiff had won a great victory, but he also knew that that victory might be endangered if he then made the claim as to alimony that he now makes. We find from the record that plaintiff and defendant agreed as to the amount of alimony that should be allowed plaintiff and that her counsel acquiesced in the agreement.

As no motion was made to modify the decree within thirty days after its rendition the trial court was powerless to change the provisions in the decree as

to alimony unless by agreement of the parties or unless plaintiff filed a petition setting up that there had been a change in the conditions of the parties subsequent to the entry of the decretal order. On November 8, 1940, plaintiff filed a petition asking for an increase in alimony. Defendant filed an answer alleging that the portion of the divorce decree relating to alimony was by agreement, that no change in the condition of the parties had occurred and that the court had no jurisdiction of the subject matter of the petition. It is unnecessary to set up in detail the allegations of the petition and the answer. On November 26, 1940, the court entered an order denying the petition of plaintiff for an increase in alimony and support. No appeal was taken from this order, and the matter of the petition and the order in reference thereto are not before us for consideration. As we have heretofore stated, plaintiff has appealed only from the portions of the decree entered October 1, 1940, relating to the alimony to be paid plaintiff and the support money to be paid her for the use of the four minor children.

A motion filed by plaintiff to strike certain portions of defendant's additional abstract, brief and argument was reserved to hearing. The motion will be denied.

The portions of the decree of the superior court of Cook county of October 1, 1940, that are appealed from are affirmed.

*Portions of decree of October 1, 1940, appealed from affirmed.*

Sullivan and Friend, JJ., concur.